ORIGINAL

FILED

08/13/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 24-0341

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 24-0341

_____

DAWSON DENNIS PATRICK, DYLAN
TODD LEE OVITT, SAMUAL MURRELL
GREEN, JOHN ARISPE, JOHN ANTHONY
BLACKBURN, JAMES HORODYSKI,
JAMES LONDON, HARLEY MCDONALD,
TROY PARKER, BRANDON ROSENHAHN,
and ANDREW SUITONU,

      Petitioners,

  v.

MONTANA FOURTH JUDICIAL DISTRICT
COURT, MINERAL COUNTY, HONORABLE
SHANE A. VANNATTA, Presiding,

      Respondent.

O R D E R

FILED

AUG 1 3 2024

Bowen Greenwood
Clerk of Supreme Court
State of Montana

_____

Petitioners are eleven individuals who faced criminal charges in the Mineral County Justice Court. In the cases of Dawson Dennis Patrick, Dylan Todd Lee Ovitt, and Samual Murrell Green, the Justice Court granted motions to suppress evidence on the basis that the investigations into their respective alleged offenses were carried out by a Mineral County Sheriff's Deputy who was not qualified to be a peace officer at the time of the investigation and arrest. The State appealed the Justice Court's respective orders to the District Court, where the matters were assigned to District Court Judge Hon. Shane A. Vannatta. The District Court reversed the Justice Court's orders granting suppression of evidence in these three cases.

In the cases of John Arispe, John Anthony Blackburn, James Horodyski, James London, Harley McDonald, Troy Parker, Brandon Rosenhahn, and Andrew Suitonu, the Justice Court dismissed the matters without prejudice. The State appealed those orders to the District Court, where the matters were assigned to District Court Judge Hon. John W. Larson. Those appeals remain pending in the District Court.

On May 29, 2024, Petitioners petitioned this Court for writ of supervisory control, alleging the District Court erred in reversing the Justice Court's orders in the cases of Patrick, Ovitt, and Green. At our invitation, the State and Judge Vannatta both responded. The State opposes Petitioners' requested relief while Judge Vannatta reiterates the basis for his rulings.

Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate. M. R. App. P. 14(3). The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. M. R. App. P. 14(3)(a)-(c). Whether supervisory control is appropriate is a case-by-case decision. *Stokes v. Mont. Thirteenth Jud. Dist. Ct.*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754 (citations omitted). Consistent with Rule 14(3), it is the Court's practice to refrain from exercising supervisory control when the petitioner has an adequate remedy of appeal. *E.g., Buckles v. Seventh Jud. Dist. Ct.*, No. OP 16-0517, 386 Mont. 393, 386 P.3d 545 (table) (Oct. 18, 2016); *Lichte v. Mont. Eighteenth Jud. Dist. Ct.*, No. OP 16-0482, 385 Mont. 540, 382 P.3d 868 (table) (Aug. 24, 2016).

As a preliminary matter, we conclude only the matters concerning Patrick, Ovitt, and Green may be further considered by this Court. M. R. App. P. 14(6) provides in part, "If a petition for an extraordinary writ or for a writ of supervisory control is filed with respect to any proceeding pending in the district court, the petition and any exhibits relating to a ruling of the district court must be served upon the district judge against whose ruling it is directed and upon all parties." This Court lacks jurisdiction to entertain the claims of the other petitioners since the Petition was not served upon Judge Larson. *B.D. & J.D. v. Thirteenth Jud. Dist.*, No. OP 21-0335, 405 Mont. 536, 495 P.3d 417 (Jul. 20, 2021). Moreover, as Judge Larson has made no rulings, Petitioners cannot establish that he is proceeding under a mistake of law.

2

As to further consideration of this Petition concerning Patrick, Ovitt, and Green, the issue presented is purely one of law: whether the District Court erred in reversing the Justice Court's orders granting Petitioners' motions to suppress on the basis that the officers were not qualified to act as peace officers at the time of investigation and arrest. Petitioners argue that we should accept this petition as a matter of judicial economy. However, we have frequently explained that conserving resources, without more, provides insufficient grounds to justify supervisory control where a party can seek review of the lower court's ruling on appeal and there is no evidence that relief on appeal would be inadequate. *Yellowstone Elec. Co. v. Mont. Seventh Jud. Dist. Ct.*, No. OP 19-0348, 397 Mont. 552, 449 P.3d 787 (table) (Aug. 6, 2019). Thus, the basis of judicial economy, without more, would not justify our further consideration on petition for writ.

The State argues that denials of motions to suppress in criminal cases are a common occurrence that do not merit consideration of supervisory control. The State further asserts that Petitioners each have an adequate remedy on appeal and this Court does not exercise supervisory control for the mere convenience of the parties.

"[A] writ of supervisory control is not to be used as a means to circumvent the appeal process. Only in the most extenuating circumstances will such a writ be granted." *State ex rel. Ward v. Schmall*, 190 Mont. 1, 617 P.2d 140 (1980). In this case, we have determined supervisory control is appropriate because Petitioners' respective cases may otherwise have different outcomes—including settlements that would preclude appeal—and the outcome of Petitioners' cases may affect other prosecutions, including those cases pending before Judge Larson.

We thus further entertain this petition for the underlying matters of Patrick, Ovitt, and Green. In each case, Patrick, Ovitt, and Green were arrested by Mineral County Sheriff's Deputy David Kunzelman after Kunzelman conducted a DUI investigation. In Patrick's case, Mineral County Sheriff's Deputy Eric Lindauer assisted in the traffic stop and detention, which occurred on August 14, 2022. Lindauer also observed Ovitt's arrest on August 26, 2022. In Green's case, Mineral County Sheriff's Deputy Shawn Visintin arrived on scene after Kunzelman initiated a traffic stop and provided Kunzelman with

3

backup on May 6, 2022.

At the time of these arrests, Kunzelman, Lindauer, and Visintin (collectively "Deputies") had not completed their mental health evaluations by a qualified provider as required for appointment as a peace officer under § 7-32-303(2)(g), MCA. The statute provides, in relevant part:

> (2) A sheriff of a county . . . may not appoint a person as a peace officer who does not meet the qualifications provided in this subsection (2). . . . A peace officer must:
>
> . . .
>
> (g) be free of any mental condition that might adversely affect performance of the duties of a peace officer, as determined after:
>
>> (i) a mental health evaluation performed by a licensed physician or a mental health professional who is licensed by the state under Title 37, who is acting within the scope of the person's licensure when performing a mental health evaluation, who is not the applicant's personal physician or licensed mental health professional, and who is selected by the employing authority; or
>>
>> (ii) satisfactory completion of a standardized mental health evaluation instrument determined by the employing authority to be sufficient to examine for any mental conditions within the meaning of this subsection (2)(g), if the instrument is scored by a licensed physician or a mental health professional acting within the scope of the person's licensure by a state.

Prior to the investigations and arrests at issue, Deputies had undergone mental health evaluations performed by a physician assistant. However, a physician assistant is neither a "physician" nor a "mental health professional" as defined by § 37-3-102(12), MCA, and § 53-21-102(11), MCA, respectively. The State does not dispute that the evaluations conducted by a physician assistant did not comply with the statutory requirement.

Kunzelman completed a statutorily compliant mental health evaluation on October 2, 2022, and ceased employment with Mineral County on December 30, 2022.

4

Lindauer, who remains employed as a Mineral County Sheriff's Deputy, completed his statutorily compliant mental health evaluation on March 23, 2023. Visintin is no longer employed with Mineral County and it is unclear from the record before us if he completed the requisite mental health evaluation prior to the termination of his employment.

In all three cases, defense counsel moved to suppress evidence Kunzelman obtained on the basis that he was not qualified to act as a peace officer at the time of his investigation and arrest of Patrick, Ovitt, and Green. The Justice Court granted the motions over the State's objection, concluding that Kunzelman had forfeited the authority and arrest powers of a peace officer by failing to meet the minimum statutory requirements. Section 7-32-303(5), MCA ("Any peace officer appointed after September 30, 1983, who fails to meet the minimum requirements as set forth in [§ 7-32-303(2), MCA,] . . . forfeits the position, authority, and arrest powers accorded a peace officer in this state.").

The State appealed the Justice Court's orders granting suppression to the District Court. Neither the State nor the defendants disagreed with the Justice Court's findings; the District Court solely considered whether the Justice Court erred as a matter of law in suppressing the evidence based on the officers' undisputed lack of qualifications.

The District Court issued similar rulings in the three cases. First, it rejected Petitioners' argument that Deputies, having failed to meet the requirements of § 7-32-303(2)(g), MCA, could only legally conduct the stops at issue by following § 46-6-502, MCA, which governs arrests by a private person. Relying on *State v. Updegraff*, 2011 MT 321, 363 Mont. 123, 267 P.3d 28, the court determined that, "[a]lthough there were issues with completion of the qualification process," Deputies were certified peace officers because both the Montana Peace Officer Standards and Training Council (POST) and the Mineral County Sheriff had certified them as such.

In *Updegraff*, a Jefferson County reserve deputy came upon a car that was parked, at night, in a day-use-only fishing access site in Madison County. She made contact with the driver, concluded that he was intoxicated, and called a Jefferson County Deputy for assistance. *Updegraff*, ¶ 1. The deputy arrested Updegraff for DUI while the reserve deputy searched Updegraff's car and collected evidence. *Updegraff*, ¶ 14. Updegraff was

then charged in the Madison County District Court. The court denied his motion to suppress, in which he had argued the Jefferson County officers had effected an illegal arrest. *Updegraff*, ¶ 2. On appeal, Updegraff argued his arrest was illegal because the officers were acting either: (1) under color of law as Jefferson County peace officers, in which case they had no authority to make an arrest in Madison County; or (2) as private citizens, in which case they failed to comply with § 46-6-502, MCA, which controls arrests by private citizens. *Updegraff*, ¶ 3. We concluded:

> [T]he private person arrest statute applies only to arrests by actual "private persons" (i.e., non-peace officers) and those whose arrest authority is, by statute, limited to that of a private person. . . . [T]o make a warrantless arrest, an out-of-jurisdiction officer must meet the arrest standard that would apply to a private person in the same circumstances, but . . . if this standard is met, the officer may then follow the procedures applicable to peace officers in processing the arrest.

*Updegraff*, ¶ 6. We found it made no sense to attempt to apply the private citizen arrest statute to peace officers because a peace officer is always a peace officer, regardless of whether they are located within their jurisdiction, because the officer is always vested by law with a duty to maintain public order and make arrests for offenses. *Updegraff*, ¶¶ 34, 48-49 (citation and internal quotation omitted).

In the cases involving Patrick, Ovitt, and Green, the District Court found Deputies were "similarly situated" to the reserve officer in *Updegraff* because "[t]hey were certified peace officers performing law enforcement duties, not 'private persons'." The court noted that the qualification for appointment as a reserve officer does not include a mental health evaluation under § 7-32-303(2)(g), MCA. It thus reasoned that, "if a reserve officer in *Updegraff* was properly characterized as a 'peace officer' for purposes of conducting a DUI investigation and detaining Mr. Updegraff, the Deputies here – with the same qualifications – must be appropriately characterized as 'peace officers'."

The court found further support in *State v. Robertson*, 2019 MT 99, 395 Mont. 370, 440 P.3d 17. In that case, the defendant alleged the arresting officer's wellness examination did not fulfill the requirements of § 7-32-303(2)(g)(i), MCA, and he argued

6

the District Court should not have allowed the officer to testify at trial because the officer was not properly certified as a peace officer. *Robertson*, ¶ 12. On appeal, this Court held that Robertson had failed to prove the peace officer's wellness examination did not meet certification requirements, but in any event, the officer could testify as to his personal knowledge regardless of certification status. *Robertson*, ¶ 23. The District Court found that *Robertson* provides "insight into the technical non-compliance" with the statute. The District Court reasoned that, since the officer was allowed to testify as to his personal observations regardless of his certification status, Kunzelman would be qualified to testify in these cases.

Ultimately, the court concluded suppression was not warranted because Patrick, Ovitt, and Green suffered no prejudice from the officers' failure to meet the certification requirements since the officers were "free of any mental condition that would adversely affect [their] performance." In its response to the present petition, the court reiterated its reasoning for denying the motions to suppress: "Petitioners' failure to articulate the prejudice suffered since the subject deputies were eventually certified, appointed, and free of any mental condition that would adversely affect their performance when they encountered the subject Petitioners."

Petitioners argue Deputies forfeited their position, authority, and arrest powers pursuant to § 7-32-303(5), MCA, and they therefore lacked the authority to investigate and arrest Petitioners. Pointing out that the District Court did not consider the implications of § 7-32-303(5), MCA, in its orders denying their respective motions, Petitioners argue the court's reliance on *Updegraff* and *Robertson* is misplaced. Petitioners argue that the officers in *Updegraff* were properly certified peace officers who, the Court determined, did not lose their authority to investigate and arrest by traveling outside their jurisdiction, while the officers in the present cases were not properly certified—and thus had no authority to investigate and arrest in any jurisdiction because they were not "peace officers" pursuant to the statute.

The State responds that the District Court correctly concluded Deputies met the requirements of reserve deputies under § 7-32-213, MCA. It maintains the same rationale

7

that allowed an out-of-jurisdiction reserve deputy to investigate and detain the suspect in *Updegraff* should apply in the present cases. The State further relies on *Wood v. Butorovich*, 220 Mont. 484, 716 P.2d 608 (1986), and argues the District Court's ruling is supported by the de facto officer doctrine. In *Wood*, relying on Kansas caselaw, we held a de facto officer's acts are valid insofar as they involve the interest of the public and a third person:

> A person who assumes and performs the duties of a public officer under color of authority and is recognized and accepted as a rightful holder of the office by all who deal with him is a de facto officer, even though there may be defects in the manner of his appointment, or he was not eligible for the office, or failed to conform to some condition precedent to assuming the office.

*Wood*, 220 Mont. at 488-89, 716 P.2d 611 (citations and quotation omitted).

However, the de facto officer doctrine cannot override a statute to the contrary. In the present matter, neither the District Court in its orders nor the State in its response brief consider § 7-32-303(5), MCA. The cases upon which they rely also do not apply or interpret § 7-32-303(5), MCA. The statute provides, in relevant part, that an officer who fails to meet the minimum requirements of § 7-32-303(2), MCA, "forfeits the position, authority, and arrest powers accorded a peace officer in this state." Unlike *Updegraff*, in the cases at issue here, the officers failed to meet the minimum requirements of § 7-32-303(2), MCA—the reserve officer was not subject to those requirements and the other responding officer presumably met those requirements; merely being physically outside his jurisdiction did not somehow negate his qualifications. *See Updegraff*, ¶ 49. We determined in *Updegraff* that the out-of-jurisdiction officers had authority because "a peace officer is *always* a peace officer." *Updegraff*, ¶ 48 (emphasis in original). In this case, Deputies were not "peace officers" because their failure to meet the statutory minimum requirements forfeited that authority. Section 7-32-303(5), MCA. In *Robertson*, we agreed with the district court that Robertson had failed to prove that the arresting officer failed to meet the minimum requirements of § 7-32-303(2), MCA, and thus § 7-32-303(5), MCA, was not at issue. *Robertson*, ¶ 23. Finally, *Wood* concerned the apparent authority of commission members whose appointments had expired, not law enforcement officers.

8

*Wood*, 220 Mont. at 487, 716 P.2d at 610. This caselaw, relied upon by the District Court and the State, cannot overcome the clear statutory authority of § 7-32-303(5), MCA, which requires the opposite result.

Because Deputies did not meet the minimum requirements of § 7-32-303(2), MCA, they forfeited their "position, authority, and arrest powers" pursuant to § 7-32-303(5), MCA. Therefore, they were not "peace officers" within the meaning of the statute when they investigated and arrested Patrick, Ovitt, and Green. We do not agree with the District Court that Petitioners needed to demonstrate they suffered prejudice because of Deputies' status. Unlike Updegraff, Petitioners were investigated and arrested by individuals who had forfeited the "powers accorded a peace officer in this state." Petitioners need not further prove they suffered prejudice.

If Deputies had forfeited their "peace officer" powers, then their authority to arrest was limited to that afforded a private person. In *Updegraff*, we explained the private person arrest statute applies to non-peace officers and "those whose arrest authority is, by statute, limited to that of a private person." *Updegraff*, ¶ 6. Section 46-6-502, MCA, therefore applies here. It provides:

> (1) A private person may arrest another when there is probable cause to believe that the person is committing or has committed an offense and the existing circumstances require the person's immediate arrest. The private person may use reasonable force to detain the arrested person.
>
> (2) A private person making an arrest shall immediately notify the nearest available law enforcement agency or peace officer and give custody of the person arrested to the officer or agency.

Although the statute authorizes a private person to make an arrest, it does not authorize a private person to investigate, search, or collect evidence. *Updegraff*, ¶ 19. Moreover, it requires the person making the arrest to immediately notify law enforcement and turn over custody of the arrestee. Section 46-6-502(2), MCA. There is no credible argument that Deputies acted within the statutory authority to arrest afforded to private persons in the cases at issue.

9

We conclude the exercise of supervisory control is appropriate in this instance because the District Court is proceeding under a mistake of law that, if uncorrected, will cause significant injustice. *State ex rel. Dusek v. Eighth Jud. Dist. Ct.*, 2003 MT 303, ¶¶ 6-7, 318 Mont. 166, 79 P.3d 292. The District Court erred when it reversed the Order Granting Motion to Suppress issued by the Mineral County Justice Court in the cases involving Patrick, Ovitt, and Green. We therefore agree these Petitioners are entitled to relief in this matter.

IT IS THEREFORE ORDERED that the Petition for Writ of Supervisory Control is ACCEPTED and GRANTED as to Petitioners Dawson Dennis Patrick, Dylan Todd Lee Ovitt, and Samual Murrell Green.

IT IS FURTHERE ORDERED that the Petition for Writ of Supervisory Control is DENIED as to Petitioners John Arispe, John Anthony Blackburn, James Horodyski, James London, Harley McDonald, Troy Parker, Brandon Rosenhahn, and Andrew Suitonu.

IT IS FURTHER ORDERED that the Findings of Fact, Conclusions of Law, and Order Reversing issued by the District Court are REVERSED in the following cases: *State v. Patrick*, DC-23-35 (TK-595-2022-0001683); *State v. Ovitt*, DC 23-34 (TK-595-2022-0001772); and *State v. Green*, DC 23-36 (TK-595-2022-0000884).

The Clerk is directed to provide immediate notice of this Order to counsel for Petitioner, all parties in the Fourth Judicial District Court, Mineral County, Cause Nos. DC-23-35, DC-23-34, DC-23-36, DC-24-5, DC-24-6, DC-24-10, DC-24-4, DC-24-8, DC-24-9, DC-24-7, DC-24-13, and DC-24-12, and the Honorable Shane A. Vannatta and Honorable John W. Larson, presiding.

Dated this 13 day of August, 2024.

_____
Chief Justice

_____

10



Justices

Justice Beth Baker would deny the Petition for Supervisory Control.